# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

DEBORAH DENISE JOHNSON,

    *Plaintiff*,

v.                                      CASE NO. 11-CV-10019

COMMISSIONER OF              DISTRICT JUDGE BERNARD A. FRIEDMAN
SOCIAL SECURITY,                MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

### I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

### II.    REPORT

#### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for Supplemental Security Income ("SSI")

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

benefits. This matter is currently before this Court on cross-motions for summary judgment. (Docs. 11, 12.)

Plaintiff was 44 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 5 at 21, 101.) Plaintiff's employment history includes work in restaurants as a cook, pantry manager and assistant manager for 14 years. (Tr. at 127.) Plaintiff filed the instant claim on December 7, 2007, alleging that she became unable to work on December 1, 2007. (Tr. at 101.) The claim was denied at the initial administrative stages. (Tr. at 46.) In denying Plaintiff's claim, the Commissioner considered asthma as a possible basis for disability. (*Id.*) On January 15, 2010, Plaintiff appeared via videoconferencing before Administrative Law Judge ("ALJ") Maren Dougherty, who considered the application for benefits *de novo*. (Tr. at 10-17, 21-44.) In a decision dated January 29, 2010, the ALJ found that Plaintiff was not disabled. (Tr. at 17.) Plaintiff requested a review of this decision on February 23, 2010 (Tr. at 8-9.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on October 29, 2010, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-3.) On January 3, 2011, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

**B.      Standard of Review**

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S.

137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations

3

based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence

without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

### C. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income Program (SSI) of Title XVI, 42 U.S.C. §§ 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [her] impairments and the fact that [she] is precluded from performing [her] past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.     ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since December 3, 2007, the application date. (Tr. at 14.) At step two, the ALJ found that Plaintiff's asthma and obesity were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ

found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 15.) At step four, the ALJ found that Plaintiff could perform her past relevant work as a restaurant manager and waitress. (Tr. at 16-17.) Alternatively, at step five, the ALJ found that Plaintiff could perform a limited range of medium work. (Tr. at 15-16.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 17.)

### E. Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff has been treated for asthma since childhood. (Tr. at 200.) On March 18, 2008, Plaintiff was examined at the request of Disability Determination Services ("DDS") by Samiullah H. Sayyid, M.D., who diagnosed her with moderate obesity, bronchial asthma and GERD. (Tr. at 201.) When Dr. Sayyid examined her lungs, there were normal breath sounds and "no rales, rhonchi or wheezes heard." (Tr. at 200.) Dr. Sayyid found that Plaintiff had no functional limitations of any kind. (Tr. at 202-03.)

A Physical Residual Functional Capacity Assessment ("RFC") performed on March 27, 2008, concluded that Plaintiff was able to occasionally lift 50 pounds, frequently lift 25 pounds, stand or walk for 6 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday, unlimited in her ability to push or pull, and was frequently limited in all postural areas except for being occasionally limited in climbing. (Tr. at 207-08.) There were no manipulative, visual, or communicative limitations established. (Tr. at 209-10.) As to environmental limitations, there were no heat, noise or vibration limitations, but it was concluded that Plaintiff should avoid concentrated exposure to extreme cold, wetness, humidity, fumes, odors, gases, etc., and hazards. (Tr. at 210.) The assessment noted that because Plaintiff is limited in her ability to move quickly to avoid

7

injury, she should avoid "dangerous settings or situations of heights, machinery, and rough, uneven, slippery, shifting, or obstructed terrain." (Tr. at 210.)

Plaintiff's daily activity report indicates that she is able to take care of her personal hygiene needs, cook her own meals, clean her home, do laundry, do small household repair, iron, walk, use public transportation, shop in stores, read, watch television, participate in limited sports, socialize, go to movies, study for college classes, attend church, and do some yard work, but that she needs help sometimes with the trash because bending causes shortness of breath and she does not mow the lawn because the grass irritates her asthma. (Tr. at 148-51.)

Plaintiff testified at the administrative hearing that she has attended Mott Community College since the fall of 2007 in a work-study program in business management. (Tr. at 26-28.) Plaintiff testified that she did not finish the program because she became employed at Blackstone's Pub and Grill as a cook for "20, 30, 35 hours or less." (Tr. at 28.)

The ALJ asked the vocational expert ("VE") to consider a person with Plaintiff's background and

> who is limited to medium work in that she can lift no more than 50 pounds occasionally, 25 pounds frequently, can perform postural activities frequently, but she can only climb ladders, stairs, ramps occasionally; she should avoid concentrated exposure to extreme cold, wetness, humidity, respiratory irritants and they put hazards I don't know why but we'll go ahead and use that too.

(Tr. at 41-42.) The VE responded that such a person could perform the past work of restaurant manager, cook and waitress, although the VE indicated that he would "not be a cook if I had difficulty breathing because of the , the exposure not only to the heat, but to the fumes . . . they're not necessarily irritating, it's just that certain odors could trigger a problem . . . [and] the use of flour could be a real problem because that could saturate the air." (Tr. at 42.) The ALJ then asked if the jobs of restaurant manager and waitress could still be performed and the VE responded in

8

the affirmative. (Tr. at 42-43.) The VE testified that his testimony was consistent with the Dictionary of Occupational Titles (DOT). (Tr. at 43.)

**F.  Analysis and Conclusions**

**1.  Legal Standards**

The ALJ determined that during the time she qualified for benefits, Plaintiff possessed the residual functional capacity to perform a limited range of medium work. (Tr. at 15-16.)

"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. 404.1567(c).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

**2.  Substantial Evidence**

Plaintiff contends that the ALJ "erred as a matter of law" "in failing to consider the reopening of prior applications as discussed at the hearing" and by "using an RFC in the decision that was not provided to the VE at the time of trial." (Doc. 11.) More specifically, Plaintiff contends that although she had requested a reopening of an earlier-filed application so that she could seek benefits under both Title II and XVI and amend the alleged onset date to April 1, 2005, the ALJ failed to consider or mention the reopening in her opinion. (Doc. 11 at 6-7; Tr. at 23-24.) Plaintiff further contends that the ALJ's decision was inconsistent with his questions posed to the vocational expert. (Doc. 11 at 8-10.)

As to the request to reopen, I suggest that even though the ALJ's opinion was silent on this issue, her consideration of medical evidence dating back to 2005 suggests that she did reopen the

9

application.[2] Where an ALJ analyzes a medical condition through "a period to which no benefits could have been rewarded absent a reopening" and the "opinion makes no reference to the prior adverse determinations, does not refer to *res judicata* . . . [i]t appears obvious that the ALJ reopened the prior application, as he may do even though there is no express statement that he has done so." *Crady v. Sec'y of HHS,* 835 F.2d 617, 620 (6th Cir. 1987). Therefore, I suggest that the ALJ in the instant case, by analyzing medical evidence dating back to November 2005 and October 2006 (Tr. at 14), reopened Plaintiff's prior application as requested at the hearing and found that Plaintiff was not disabled as of the amended onset date or through the application date. I suggest that under these circumstances, "'remand would be an idle and useless formality,' [and] courts are not required to 'convert judicial review of agency action into a ping-pong game,'" *Kobetic v. Comm'r of Soc. Sec.*, 114 Fed. App'x 171, 173 (6th Cir. 2004) (citations omitted).

I further suggest that Plaintiff's contention that the ALJ's decision was inconsistent with the questions posed to the VE is also without merit. (Doc. 11 at 8-10.) Plaintiff notes that at the hearing, the ALJ asked the VE to assume a person who "should avoid concentrated exposure to extreme cold, wetness, humidity, respiratory irritants and they put hazards I don't know why but we'll go ahead and use that too . . . ." (Tr. at 41-42; Doc. 11 at 8.) Plaintiff then notes that in the ALJ's opinion, he indicated that Plaintiff "must avoid concentrated exposure to humidity and wetness, fumes, odors, dusts, gases and poor ventilation." (Tr. at 15; Doc. 11 at 9.) I suggest that "respiratory irritants" is simply a shorthand for "fumes, odors, dust, gases, and poor ventilation" and that the phrases are so substantially similar as to be interchangeable. In addition, the use of the broader phrase "respiratory irritants" at the hearing would require the VE to consider all potential

---

[2] I note that Plaintiff did not make this argument to the Appeals Council but instead simply argued at that level that the ALJ's decision was not based on substantial evidence. (Tr. at 8.)

10

irritants, not just those expressly listed in the ALJ's decision. In addition, the list of examples of potential irritants matches those from the RFC assessment. (Tr. at 210.) Therefore, I suggest that Plaintiff could not have been harmed by the ALJ's use of the phrase "respiratory irritants" in the hearing.

In addition, Plaintiff complains that although the ALJ's opinion referred to Plaintiff's need to avoid "unprotected dangerous settings or situations of heights, machinery and rough, uneven, slippery, shifting or obstructed terrain" (Tr. at 15), the "RFC given by the ALJ at trial is void of the specifics listed in the denial." (Doc. 11 at 9.) Again, the ALJ used a more general term, "hazards," at the hearing. (Tr. at 41-42.) I suggest that the use of the more general term "hazards" would have required the VE to consider all hazards, not just those listed by the ALJ in his opinion and in the RFC assessment of record. (Tr. at 210.) As with the respiratory irritants discussed above, if anything, the hypothetical was based on more limitations than necessary. I therefore suggest that Plaintiff could not have been harmed by the ALJ's use of the more sweeping general terms when posing the hypothetical to the VE.

I further suggest that the hypothetical posed to the VE properly incorporated the limitations found in the RFC assessment and that the hypothetical was in harmony with the objective record medical evidence and Plaintiff's own description of her ability to take care of her personal hygiene needs, cook her own meals, clean her home, do laundry, do small household repair, iron, walk, use public transportation, shop in stores, read, watch television, participate in limited sports, socialize, go to movies, study for college classes, attend church, and do some yard work. (Tr. at 148-51.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

11

### 3. Conclusion

For all these reasons, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                               s/ Charles E Binder
                                          CHARLES E. BINDER
Dated: November 3, 2011               United States Magistrate Judge

**CERTIFICATION**

    I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date:  November 3, 2011                             By      s/Patricia T. Morris
                                                                     Law Clerk to Magistrate Judge Binder